IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| FRANCIS BELL, ) | |
| ) | Civil Action No: 3:04-633-MBS-BM |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| THE UNIVERSITY OF SOUTH ) | |
| CAROLINA, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This action was filed by the Plaintiff pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq., alleging employment discrimination. The Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on September 30, 2005. After receiving an extension of time to respond, Plaintiff filed a memorandum in opposition to the Defendant's motion on October 25, 2005, following which Defendant filed a reply memorandum on November 4, 2005. Defendant's motion is now before the Court for disposition.[1]

**Background and Evidence**[2]

Plaintiff is an African-American who began working for the Defendant in 1990 as

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendant has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2]The facts and evidence are considered and discussed hereinabove in the light most favorable to the Plaintiff, the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).

1



a Trades Helper in the Energy Services Department. Plaintiff's Deposition, pp. 7, 9. Plaintiff claims that in 1993 he did not receive adequate compensation during a period of time he temporarily assumed most of his white supervisor's duties while his supervisor (Allen Ethridge) was on an extended sick leave of absence. Plaintiff's Deposition, pp. 16, 20, 22-25; Defendant's Exhibit 9. Plaintiff was subsequently promoted to a Trades Specialist V position in 2001, at which time he received a 10% salary increase. Plaintiff's Deposition, p. 27; Defendant's Exhibits 7, 9. Plaintiff claims, however, that he still did not earn the same salary as two white Trade Specialist V's. Plaintiff's Deposition, pp. 34-37.

Plaintiff further claims that for approximately a year sometime between 2002 and 2004, his white supervisor (Roy Taylor) was out on military leave, during which time he and his co-workers assumed Taylor's duties. Plaintiff complains, however, that despite assuming these additional duties, he did not receive the same salary as Taylor during that period of time. Plaintiff's Deposition, pp. 10, 35. Finally, Plaintiff claims that a group of jobs in the Energy Services Department called "pneumatic control" jobs pay approximately $2,300 more annually than the positions in Plaintiff's division, and that white employees are "automatically shunted into the pneumatic control jobs on a more or less routine basis." Plaintiff further believes that what he does is no less difficult or challenging than the work in pneumatic control. See Plaintiff's Supplemental Answers to the Defendant's Interrogatories; see also Plaintiff's Deposition, pp. 28-29, 31.

On or about October 5, 1999, Plaintiff as well as some other maintenance employees of the Defendant filed a joint administrative charge of discrimination with the Equal Employment Opportunity Commission (EEOC). Plaintiff's Deposition, pp. 7-8; Defendant's Exhibit 1. The EEOC reviewed these complaints, which alleged discrimination between August 19, 1997 and October 1,



1999, for each individual listed on the administrative charge. Id. After Plaintiff's receipt of a right to sue letter on May 21, 2001; see Plaintiff's Deposition, p. 8; Defendant's Exhibit 2; this action was filed in the United States District Court asserting claims for disparate treatment race discrimination.[3]

## Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.

### I.

### (Time Barred Claims)

Defendant first argues in its motion for summary judgment that Plaintiff's claim from 1993, when he assumed many of his supervisor's duties for a period of eighteen months but was not afforded the same rate of pay as his supervisor, should be dismissed because it is time barred. After careful consideration of the arguments and exhibits presented, the undersigned is constrained to agree. Title VII requires that a claimant file a charge of discrimination with the EEOC within one hundred and eighty (180) days of the alleged discriminatory act or acts, or, if the alleged discrimination occurred in a "deferral state", within three hundred (300) days from

---

[3]Plaintiff initially filed a joint lawsuit together with the other maintenance employees. That initial action was subsequently withdrawn so that each Plaintiff could separately pursue their own individual claims in this Court.

3



the alleged discriminatory act or acts if the claimant initially institutes proceedings with the appropriate state agency, or within thirty (30) days of the state agency's termination of its proceedings, whichever is earlier. See 42 U.S.C. § 2000e-5(e).

Here, it is undisputed that South Carolina is a deferral state, and that the South Carolina Human Affairs Commission (SCHAC) is the appropriate state agency for purposes of initiating state proceedings. The record reflects that Plaintiff's administrative charge was forwarded to SCHAC by the EEOC on or about October 16, 1999, although it was investigated by the EEOC pursuant to a "work sharing agreement." Plaintiff's Deposition, Defendant's Exhibit 1. Therefore, Plaintiff had three hundred (300) days to file his administrative charge following a discriminatory act, and a failure by the Plaintiff to do so bars him from pursuing a Title VII lawsuit in this Court with respect to any alleged discriminatory act which falls outside of this three hundred (300) day period. United Black Firefighters of Norfolk v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979); Mickel v. South Carolina State Employment Serv., 377 F.2d 239, 242 (4th Cir. 1967); see National RR Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002).[4]

---

[4]A claimant may in some circumstances include claims beyond this three hundred (300) day period where the Defendant's conduct is deemed to be a "continuing violation." However, under the applicable caselaw, separate and distinct acts are not considered as part of a "continuing violation" together with any prior (and untimely) allegedly discriminatory decisions which involved the same claimant. See Morgan, 536 U.S. at 117 [finding that "discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice'," and prior discrete discriminatory acts which are not filed within the 300 day time limit "are untimely filed and no longer actionable."]; Williams v. Giant Food, Inc., 370 F.3d 423, 429 (4th Cir. 2004) [continuing violation doctrine does not apply to a failure to promote claim, as a promotion decision is a discreet act of discrimination]; cf. Huckabay v. Moore, 142 F.3d 233, 239 (5th Cir. 1998) [distinguishing applicability of the continuing violation theory to hostile work environment claims, for which it may be used, from other types of claims, such as failure to promote].

4



Based on Plaintiff's administrative charge filing date of October 5, 1999, any separate and distinct discrimination claims occurring prior to December 9, 1998 would not be actionable. Williams, 370 F.3d at 429; Morgan, 536 U.S. at 114. Although salary discrimination can be considered a continuing violation in some cases; Brinkley-Obu v. Hughes Training, Inc., 36 F.3d 336, 345-348 (4th Cir. 1994); that would not be the case here since this claim only covered a short period of time and Plaintiff had knowledge of the alleged discriminatory act well before the 300 day deadline. Plaintiff's Deposition, pp. 9-10, 16, 20, 22-25; Defendant's Exhibit 9. See Becker v. Gannett Satellite Information Network, Inc., 10 Fed. Appx. 135, 139-140 (4th Cir. 2001); Miller v. American Family Mutual Ins. Co., 203 F.3d 997, 1004 (7th Cir. 2000) [even though alleged discriminatory pay practice continued into limitations period, plaintiff was aware of alleged pay inequality well before then and therefore could not rely on the continuing violation theory]; Morgan, 536 U.S. at 114 [holding that "salary discrimination" can be a discrete act]; see also Dasgupta v. University of Wisconsin Bd. of Regents, 121 F.3d 1138, 1140 (7th Cir. 1997).

Therefore, as this claim falls outside of the three hundred (300) day claim period, it may not ordinarily be considered by this Court. While Plaintiff advances two arguments as to why this claim should be considered notwithstanding the three hundred (300) day time bar; hostile work environment and equitable estoppel; for the reasons set forth hereinbelow, the undersigned does not find that either of these arguments has any merit.[5]

---

[5] Plaintiff also refers in his memorandum to claims of other individuals who worked for the Defendant. However, the previous multi-Plaintiff case was dismissed specifically so that each Plaintiff could pursue their own, *individual*, claim against this Defendant. Neither this action, or even the prior multi-Plaintiff action, is or ever was a class action. Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 190 (4th Cir. 2004) ["[A]n individual plaintiff in a private, non-class action alleging employment discrimination is not litigating common questions of fact, but the

5



With respect to hostile work environment, Plaintiff has testified only to alleged incidents of pay disparity. Pursuant to this Court's order of February 15, 2005, Plaintiff was required to specifically identify the claim or claims he was asserting in this lawsuit, and no evidence, exhibits, or other information has been submitted to this Court to show that any hostile work environment claim was being asserted by this Plaintiff. Plaintiff cannot now change his theory of recovery, nor is the Defendant required to defend a claim which essentially becomes a "moving target" depending on the facts and arguments presented.

In any event, even if Plaintiff had asserted a hostile work environment claim in this case, "[i]ncidents outside of the statutory window are [nevertheless] time-barred unless they can be related to a timely incident as a 'series of separate but related acts' amounting to a continuing violation". Beall v. Abbott Laboratories, 130 F.3d 614, 620 (4th Cir. 1997) (citing Jenkins v. Home Ins. Co., 635 F.2d 310, 312 (4th Cir. 1980)); Morgan, 536 U.S. at 105 ["[C]onsideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as any act contributing to that hostile work environment takes place within the statutory time period."]; Huckabay, 142 F.3d at 239. Plaintiff has identified no specific act contributing to any hostile work environment that took place within the statutory time period. Therefore, Plaintiff's hostile work environment argument is without merit.

As for equitable estoppel, Plaintiff states in his brief only that "[f]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court,

---

discrete question of whether the employer discriminated against the plaintiff in a specific instance."] (quoting Lowery v. Circuit City Stores, Inc., 158 F.3d 742, 761 (4th Cir. 1998)).

6



but a requirement that, like a statute of limitations, is subject to waiver, estoppel and equitable tolling", citing to Zipes v. Trans World Airlines, Inc., 455 U.S. 385 (1982)]. Plaintiff's Memorandum, p. 7. However, Plaintiff has referenced no exhibits or even argument to support a claim for equitable estoppel in this case. Just because Plaintiff points out in his brief that the doctrine of equitable estoppel is sometimes applied to Title VII claims does not mean that he is entitled to such relief. "Equitable relief is reserved for only the most deserving complainants," usually where there exists affirmative misconduct. Polsby v. Chase, 970 F.2d 1360, 1363 (4th Cir. 1992), vacated on other grounds, 113 S.Ct. 1940 (1993)

> Federal courts have typically extended equitable relief only sparingly. We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.

Polsby, 970 F.2d at 1363 (quoting Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)). Here, as noted, Plaintiff has presented no evidence whatsoever to show that he is entitled to equitable estoppel in this case. Ramirez v. City of San Antonio, 312 F.3d 178, 183 (5th Cir. 2002) ["The party who invokes equitable tolling bears the burden of demonstrating that it applies in his case."]; see also Madison v. St. Joseph Hospital, 949 F.Supp. 953, 960 (D.N.H. 1996).

In reaching the conclusion set forth herein, the undersigned is not signaling a lack of concern over Plaintiff's claims. However, the Fourth Circuit has strictly construed the statutory filing requirements for Title VII cases, holding that "[p]rocedural requirements...for gaining access to the...courts are not to be disregarded by courts out of a vague sympathy for particular litigants." Polsby, 970 F.2d at 1364, vacated on other grounds, 113 S.Ct. 1940 (1993) (quoting Baldwin County

7



Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984)); see Poteat v. Mack Trucks Inc., No. 96-1437, 1997 WL 33117, **4 (4th Cir. January 28, 1997); Chappell v. Emco Machine Works Co., 601 F.2d 1295, 1303 (5th Cir. 1979). Since Plaintiff failed to file his administrative charge within three hundred (300) days of the discrimination claim at issue, and in light of the applicable caselaw and statutory requirements, the undersigned has no choice but to find that this claim is time barred and therefore subject to dismissal.

## II.

### (Claims that have not been Exhausted)

With respect to Plaintiff's claims that he was denied equal pay following a promotion in 2001 and then was denied adequate pay while performing some of his supervisor's duties for a period of time between 2002 and 2004, Defendant argues that these claims are subject to dismissal for failure of the Plaintiff to exhaust his administrative remedies with respect to these claims. The undersigned agrees.

Title VII requires, as a prerequisite to suit, that a plaintiff first exhaust his administrative remedies by filing a charge of discrimination covering the alleged unlawful employment practice; 42 U.S.C. § 2000e-5(e)(1); and failure to comply with this requirement bars a plaintiff from pursuing a lawsuit under this statute with respect to any such unexhausted claim. United Black Fire Fighters of Norfolk, 604 F.2d at 847. Under the applicable caselaw, each of these claims is a separate, distinct claim requiring exhaustion of administrative remedies. Morgan, 536 U.S. at 110; see Romero-Ostolaza v. Ridge, 370 F.Supp.2d 139, 149 (D.D.C. 2005) ["Morgan, on the whole, has been understood to also bar discrete acts occurring after the time period, after the filing of an administrative complaint, when a plaintiff does not file a new

8



complaint or amend the old complaint but instead presents these acts for the first time in federal court"]; Martinez v. Potter, 347 F.3d 1208, 1210-1211 (10th Cir. 2003) ["[T]he [Morgan] rule is equally applicable…to discrete claims based on incidents occurring *after* the filing of [an] EEO complaint."] (emphasis in original).

The evidence reflects that these claims, which fall between 2001 and 2004, both occurred well after the administrative charge was filed in this case, as well as after Plaintiff received his right to sue letter. See Plaintiff's Deposition, Defendant's Exhibit 7. Further, Plaintiff's current Complaint, which was filed in March 2004, makes no reference whatsoever to either of these two claims. The fact that Plaintiff had previously filed an administrative charge asserting that he had been denied a promotion or failed to receive raises does not mean that he can automatically litigate a pay claim occurring subsequent to the filing of that administrative charge, particularly when the investigation and disposition of that administrative charge had been conducted and the right to sue letter issued well before the subsequently occurring event. Romero-Ostolaza, 370 F.Supp.2d at 149; Martinez, 347 F.3d at 1210-1211; see also Carter v. New York, 310 F.Supp.2d 468, 474 (N.D.N.Y. 2004) [Court granted summary judgment where plaintiff alleged a new set of discriminatory acts, all of which occurred after the filing of Plaintiff's EEOC complaint. Plaintiff never brought claims before the EEOC at any point and acknowledged that investigation concluded before some events occurred], aff'd, 151 Fed.Appx. 40 (2d Cir. 2005). Plaintiff is also not entitled to any equitable relief with respect to these claims. See Section I, supra.

The burden of proving satisfaction of administrative requirements falls on the Plaintiff. Williams v. Enterprise Leasing Co. of Norfolk/Richmond, 911 F.Supp. 988, 993 (E.D.Va. 1995). Since exhaustion of administrative remedies is a prerequisite for filing suit under

9



Title VII, and Plaintiff failed to exhaust his administrative remedies with respect to these claims, they should be dismissed.

### III.

### (Disparate Pay Claim Relating to Pneumatic Control Jobs)

With respect to Plaintiff's claim regarding the alleged disparity between his pay and the pay received by employees working in pneumatic control jobs, and whether there was any discriminatory animus with respect to this differential and/or these job assignments, this claim as stated could fall within the time period encompassed by Plaintiff's administrative charge. Although this particular claim is not mentioned in the administrative charge or in the general and conclusory allegations of Plaintiff's Complaint, it was referenced by Plaintiff in his supplemental answers to Defendant's interrogatories, as well as in his deposition. However, even if properly before this Court, Plaintiff has failed to set forth sufficient facts to survive summary judgment on this claim.

Since Plaintiff has no direct evidence of discrimination, he must proceed under the structured procedures set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); see also Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981).[6] The United States

---

[6]Pursuant to recent court rulings, consideration of Plaintiff's claim under the so-called "mixed-motive" analysis is also now allowed, even though Plaintiff has presented only circumstantial, or in-direct, evidence of discrimination. Previously, consideration of a claim under the mixed-motive analysis was only proper in direct evidence cases. See Hill v. Lockheed Martin, 354 F.3d 277, 284-285 (4th Cir. 2004); Mereish v. Walker, 359 F.3d 330, 339-340 (4th Cir. 2004); cf. Taylor v. Virginia Union Univ., 193 F.3d 219, 232 (4th Cir. 1999) [en banc], cert. denied, 528 U.S. 1189 (2000). However, since the Defendant only discusses Plaintiff's claim under the traditional McDonnell Douglas proof scheme, and Plaintiff does not discuss this issue at all, the undersigned has only evaluated Plaintiff's claim using a McDonnell Douglas analysis. Cf. Kess v. Municipal Employees Credit Union of Baltimore, Inc., 319 F.Supp.2d 637, 643 & n. 11 (D.Md. 2004).

10



Supreme Court articulated a three-part analysis for reviewing discrimination cases in McDonnell Douglas. First, Plaintiff must establish a prima facie case of discrimination.  Once a prima facie case has been established, a rebuttable presumption is created that the employer unlawfully discriminated against the Plaintiff.  Second, once this presumption has been established, the burden of production shifts to the employer to show a legitimate, non-discriminatory reason for its actions. Third, if the employer shows a legitimate, non-discriminatory reason for its actions, the burden is then on the Plaintiff to come forward with evidence that the employer's asserted reasons for its actions are a mere pretext for its true discriminatory motives, and that the actions of the employer were really based on Plaintiff's race.  McDonnell Douglas Corp., 411 U.S. at 802-805; Texas Dep't of Community Affairs, 450 U.S. at 252-256; Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 234-235 (4th Cir. 1991). Despite these shifting burdens of production, however, Plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout.  Texas Dep't of Community Affairs, 450 U.S. at 252-253; see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).

In order to establish a prima facie case for race discrimination in compensation under Title VII, Plaintiff must show that (1) he is a member of a protected class; (2) he was paid less than an employee outside the class; and (3) the higher paid employee was performing a substantially similar job.  Brinkley-Obu v. Hughes Training, Inc., 36 F.3d 336, 343 (4th Cir. 1994); Kess, 319 F.Supp.2d at 644; Gbenoba v. Montgomery County Dep't of Health & Human Servs., 209 F.Supp.2d 572, 579 (D.Md. 2002). It is undisputed that Plaintiff is a member of a protected class, and the Defendant does not dispute for purposes of summary judgment that he was paid less than some employees outside of his protected class.  With respect to the third prong of

11



Plaintiff's prima facie case, however, Defendant argues that Plaintiff has presented no evidence to show that the pneumatic control jobs at issue are substantially similar to Plaintiff's job, and has therefore failed to establish his prima facie case. Defendant points to the job descriptions for these positions to support this argument.

Plaintiff is in "steam distribution", the purpose of which is described as follows:

> Directs and supervises trades personnel in the operation and maintenance of chilled water and high pressure steam distribution system and other associated equipment of the USC Columbia campus, consisting of over 200 acres. Operates and maintains auxiliary steam in hot water boilers and associated equipment and controls.

Plaintiff's Deposition, Defendant's Exhibit 7.

Among the essential functions of this job are the following:

> Supervises and performs routine installation, maintenance and repair of the chilled water and steam distribution system including piping, valves, expansion joints, steam traps, steam control stations, condensate receivers and associated pumps….Operate and supervise maintenance of auxiliary campus boilers; checking to insure that proper operating parameters are maintained.

Id.

By contrast, the job purpose for the pneumatic control position is as follows:

> Responsible for the "efficient operation" and maintenance of the USC campus Central Energy Management System (EMS) and the Direct Digital Controls (DDC) for Heating, Ventilation and Air Conditioning in major campus facilities. Trains HVAC maintenance personnel in control operation, troubleshooting and maintenance as well as provide support to other campus facilities as required.

Plaintiff's Deposition, Defendant's Exhibit 8.

The essential functions of this position are described as follows:

> Operates and maintains the Campus Central Energy Management System to optimum energy efficiency and reduce cost. Performs system operation, program development and implementation of HVAC control strategies. Maintenance of

12



>Primary Building Control Systems and Peripheral Devices including, pneumatic, electric and direct controls for such systems as Central Air Handling Units, Multi-Zone Units, pumping systems and associated EMS hardware….provides input for design plans and specifications to install new controls and HVAC upgrades. Reviews and inspects new control installation projects to ensure compliance with plans and specifications. As necessary, advises, instructs and oversees training for HVAC personnel in the operation and maintenance of HVAC control systems and field devices such as thermostats, pressure and temperature sensors, flow sensors, VAV volume regulators, Air Handling Units…etc.

Id.

While Plaintiff believes his job is no less difficult or challenging than the work performed in pneumatic control, he conceded at his deposition that he was unfamiliar with the primary functions of the employees in the pneumatic control department, and further testified that "[w]e don't work on none of their stuff", although they are called to help troubleshoot if a steam problem is suspected. Plaintiff's Deposition, pp. 28-31.

  Plaintiff's testimony does not establish that these jobs are substantially similar for purposes of a pay discrimination claim, while the job descriptions provided by the Defendant clearly show that the requirements and functions of these jobs are not the same. Brinkley-Obu, 36 F.3d at 343 [to establish a prima facie case of race discrimination in compensation under Title VII, a plaintiff must prove that the higher paid employee was preforming a substantially similar job]; Gustin v. West Virginia University, 63 Fed.Appx. 695, 698-699 (4th Cir. May 16, 2003) [salary differential justified where position and duties were in fact superior to the Plaintiff's]; Houck v. Virginia Polytechnic Institute and State University, 10 F.3d 204, 206 (4th Cir. 1993) [Plaintiff must show he receives less pay than a co-employee, outside of his protected class, performing work substantially equal in skill, effort, and responsibility under similar working conditions.]; Ogden v. Keystone Residence, 226 F.Supp.2d 588, 602 (M.D.Pa. 2002). Therefore,

13



Plaintiff has failed to establish that his job is substantially similar to the job of pneumatic controls, and has consequently failed to establish all of the all of the necessary elements of his prima facie case.

Further undercutting Plaintiff's claim is the uncontested fact that both whites and African-Americans were employed in these pneumatic control positions. See Plaintiff's Supplemental Answers to Defendant's Interrogatories; *Cf.* Crowell v. Taft Broadcasting Co., Nos. 76-0828, 75-1360, 1978 WL 4220 at *13 (N.D.Ala. Apr. 27, 1978) ["[T]he point of focus for the court is whether particular means of compensation in employment are discriminatory, racially discriminatory, and that does not mean necessarily that because a particular black receives less money than a particular white that is in and of itself discriminatory under Title VII, if that is the method by which that difference is applied across the board and uniformly as to both whites and blacks."].  Plaintiff has provided no evidence to support his general and conclusory statement that African-Americans are denied jobs in pneumatic control. This claim should be dismissed.

### Conclusion

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment be **granted**, and that this case be **dismissed**.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

August 9, 2006

